UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| CARLOS ALBERTO LOPEZ HERNANDEZ, | ) ) ) | Civil No. 15-10-ART |
| Petitioner, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION** |
| ED PRINDLE, et al., | ) ) | **AND ORDER** |
| Respondents. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Petitioner Carlos Alberto Lopez Hernandez filed a petition seeking habeas corpus relief under 28 U.S.C. § 2241.  *See* R. 1.  He asks the Court to compel United States Immigration and Customs Enforcement ("ICE") to hold a bond hearing under 8 U.S.C. § 1226(a) before concluding proceedings to remove him from the United States.  R. 1 at 16.  Lopez Hernandez, however, is not entitled to such a hearing.

## BACKGROUND

Lopez Hernandez is 22 years old.  R. 1 ¶ 20.  Thought he is a native of Mexico, he has lived in the United States for the last eight years.  *Id.* ¶¶ 20–22.  In December 2012, Lopez Hernandez was arrested for possessing marijuana.  *Id.* ¶ 23.  After he posted bond on his state court charge, ICE took him into custody and initiated a removal proceeding under 8 U.S.C. § 1229a.  *Id.* ¶ 24.  Then ICE released him on bond.  *Id.* ¶ 25.  Two months later, Lopez Hernandez pled guilty to a Class One Misdemeanor in state court and received one year of probation.  *Id.* ¶¶ 25–26.

Despite his undocumented status, Lopez Hernandez worked on a Material Handling Solutions crew. *Id.* ¶¶ 29–30. When the crew took an assignment to clean conveyor belts at the Cincinnati International Airport, airport personnel discovered that Lopez Hernandez was working under a false name. *Id.* So, once again, Lopez Hernandez was arrested. *Id.* ¶ 30.

On January 20, 2015, Lopez Hernandez appeared before an Immigration Judge ("IJ") in Chicago, Illinois. *Id.* ¶ 31. After hearing from both parties, the IJ ruled that Lopez Hernandez was subject to mandatory detention under 8 U.S.C. § 1226(c) rather than discretionary detention under 8 U.S.C. § 1226(a). *Id.* ¶¶ 31–32. Since December 1, 2014, he has remained in ICE custody without a bond hearing. *Id.* ¶ 33.

## DISCUSSION

### I.      Exhaustion of Claims

ICE argues that Lopez Hernandez must exhaust his administrative remedies with the Board of Immigration Appeals ("BIA") before bringing his habeas challenge to this Court. R. 7 at 4. ICE is incorrect.

Courts have long recognized a requirement that parties exhaust administrative remedies before turning to federal courts. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938). Despite the doctrine's judicial roots, courts cannot waive exhaustion when Congress requires it by statute. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). But here, though Congress requires aliens to exhaust administrative remedies before challenging a final order of removal, *see* 8 U.S.C. § 1252(d), it imposes no such requirement on challenges to mandatory detention pending a removal decision.

2

*See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).   In the absence of congressional mandate, courts waive the judge-made exhaustion requirement when (1) a long exhaustion process would create undue prejudice, (2) an administrative remedy is inadequate, such as when an agency lacks the authority to resolve the constitutionality of a statute, and (3) the appeal would be futile because the agency has "predetermined the issue before it."  *See McCarthy*, 503 U.S. at 146–48 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973)).  The last two exceptions apply in this case.

Any efforts by Lopez Hernandez to exhaust his statutory claim would be futile because the BIA has already ruled that the delay between release from criminal custody and detention by ICE does not exempt an alien from mandatory detention under 8 U.S.C. § 1226(c).  *See In Re Rojas*, 23 I. & N. Dec. 117, 127 (BIA 2001) ("[T]he respondent is subject to mandatory detention . . . , despite the fact that he was not taken into Service custody immediately upon his release from state custody.").  The BIA is similarly incapable of resolving the constitutionality of the mandatory detention provision at issue in this case.  *See In Re Joseph*, 22 I. & N. Dec. 660, 665 (BIA 1999) ("We note that it is not within the purview of this Board to pass upon the constitutionality of the mandatory detention provision in section 236(c)(1) . . . ."); *Liu v. Waters,* 55 F.3d 421, 425 (9th Cir. 1995) ("[T]he BIA lacks jurisdiction to decide questions of the constitutionality of governing statutes or regulations.").  Accordingly, Lopez Hernandez need not exhaust his claims before bringing them here.

## II.    Statutory Claim

For aliens "detained pending a decision on whether the alien is to be removed," § 1226(a) provides for discretionary detention and the possibility of release on bond. 8 U.S.C. § 1226(a).  In contrast, § 1226(c) provides for mandatory detention without a bond hearing, but only for a specific class of aliens:  "The Attorney General shall take into custody any alien who is inadmissible . . . [or] deportable by reason of having committed [certain enumerated offenses] when the alien is released."  *Id.* § 1226(c)(1).  Subsection (c)(2) then provides a narrow exception to that rule: "The Attorney General may release an alien described in paragraph (1) only if" release is "necessary" to facilitate witness protection.  *Id.* § 1226(c)(2).

Because the witness-protection exception does not apply here, Lopez Hernandez is eligible for release on bond only if he is not "an alien described in paragraph (1)."  *Id.* Lopez Hernandez argues exactly that, and accordingly maintains that he cannot be detained without a bond hearing.   But Lopez Hernandez concedes he committed a qualifying offense under § 1226(c)(1):  marijuana possession.  R. 1 ¶¶ 26, 44 (admitting to a conviction for marijuana possession); 8 U.S.C. § 1226(c)(1)(A) (requiring detention without a bond hearing of any alien who is inadmissible for committing "any offense covered in section 1182(a)(2) of this title"); 8 U.S.C. § 1182(a)(2)(A)(i)(II) (identifying as an offense "a violation of . . . any law or regulation . . . related to a controlled substance").

In spite of his qualifying offense, Lopez Hernandez argues that he is not "an alien described in paragraph (1)" because the Attorney General did not "take [him] into custody . . . *when* [*he was*] *released*" from state custody.  R. 1 ¶¶ 39–40 (quoting 8 U.S.C.

§ 1226(c)(1)) (emphasis added).   According to Lopez Hernandez, the "'when released' language . . . requires the government to exercise its mandatory detention authority" either "immediately after the alien's release from the triggering criminal incarceration" or not at all.  *Id.* ¶ 42.  Because ICE waited to detain him until nearly two years after his release on the marijuana charge, Lopez Hernandez contends that he is entitled to a bond hearing under the discretionary detention provision, § 1226(a).[1]  *Id.* ¶¶ 36, 44.

More than a decade ago, the BIA rejected Lopez Hernandez's argument, holding that § 1226(c) does not require mandatory detention to immediately follow the release from criminal detention.  *In Re Rojas*, 23 I. & N. Dec. 117, 121 (BIA 2001).  Instead, the BIA explained, the "when released" clause merely "specified the point in time at which th[e] duty [to detain] arises."  *Id.*  It is not, however, "part of the *description* of an alien who is subject to [mandatory] detention."  *Id.*  That is, "an alien described in paragraph (1)" is an alien that committed one of the enumerated offenses in paragraphs (A) through (D), regardless of whether the BIA actually detained the alien as soon as the duty arose— "when [he was] released"—or at some later time.  *See id.*; 8 U.S.C. § 1226(c)(1).

Under *Chevron*'s two-step inquiry, courts must defer to an agency's reasonable interpretation of an ambiguous statute that it administers.  *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005) ("*Chevron* established a familiar two-step procedure for evaluating whether an agency's interpretation of a statute

---

[1] Though courts often assume that § 1226(a) requires a bond hearing, at least one court has disagreed. *Sulayao v. Shanahan*, No. 09CIV.7347PKC, 2009 WL 3003188, at *7 (S.D.N.Y. Sept. 15, 2009) ("Nothing in the plain language of section 1226(a) requires that an alien detained pursuant to that statute be granted a bond hearing.").  Because ICE does not dispute that Lopez Hernandez would receive a bond hearing if he fell within § 1226(a), however, the Court has no reason to resolve the question.

is lawful.").  In immigration cases, courts defer to the BIA where it "gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'" *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 448–49 (1987)).  Under *Chevron*, a court must first ask whether the statute is "ambiguous with respect to the specific issue." *Chevron*, 467 U.S. at 843.  If the statute is ambiguous, a court must determine whether the agency's interpretation is "based on a permissible construction"—whether the interpretation is reasonable. *Id.*  The court must then defer to the "reasonable interpretation" of the agency. *Id.* at 844.

The Court does not consider this question on a blank slate.  In the fourteen years since *Rojas*, district courts throughout the United States, including multiple courts within the Sixth Circuit, have reached conflicting answers.  *Compare Orozco-Valenzuela v. Holder*, No. 1:14-CV 1669, 2015 WL 1530631, at *9 (N.D. Ohio Apr. 6, 2015) (deferring to *Rojas* as a reasonable interpretation of an ambiguous statute under *Chevron*), *with Khodr v. Adduci*, 697 F. Supp. 2d 774, 779 (E.D. Mich. 2010) (refusing to defer under *Chevron* because *Rojas* is "contrary" to the "clear" meaning of the statute) and *Rosario v. Prindle*, No. CIV. 11-217-WOB-CJS, 2011 WL 6942560, at *3 (E.D. Ky. Nov. 28, 2011) *report and recommendation adopted*, No. CIV.A. 2011-217 WOB, 2012 WL 12920 (E.D. Ky. Jan. 4, 2012) (same).

Three of the four courts of appeals to consider the question have either deferred to or followed the BIA's interpretation in *Rojas*.  *See Olmos v. Holder*, No. 14-1085, 2015 WL 1296598 (10th Cir. Mar. 24, 2015) (deferring to the BIA's holding in *Rojas* as a permissible interpretation of § 1226(c) under *Chevron*); *Sylvain v. Attorney Gen. of U.S.*,

714 F.3d 150, 161 (3d Cir. 2013) (holding, without reliance on *Chevron*, that a "four-year delay—however regrettable—did not eliminate [the] authority to impose mandatory detention"); *Hosh v. Lucero*, 680 F.3d 375, 380 (4th Cir. 2012) (deferring under *Chevron* to the BIA's permissible interpretation in *Rojas* that mandatory detention does not require immediate detention).  The most recent decision, by the First Circuit, rejected the BIA interpretation as unreasonable under *Chevron* step two, though the opinion has since been withdrawn for rehearing *en banc*.  *See Castaneda v. Souza*, 769 F.3d 32, 45 (1st Cir. 2014), *reh'g en banc granted*, *opinion withdrawn* (Jan. 23, 2015).

   **a.   Chevron Step One: Ambiguity**

Recall the structure of § 1226(c)(1) and (2):

> (1) Custody
> The Attorney General shall take into custody any alien who--
> > (A) is inadmissible [under parts of § 1182],
> > (B) is deportable [under parts of § 1227],
> > (C) is deportable [and sentenced under parts of § 1227], or
> > (D) is inadmissible under [parts of §§ 1182 and 1227],
> > when the alien is released . . . .
> (2) Release
> The Attorney General may release an alien described in paragraph (1) only if [a witness protection exception applies].

Lopez Hernandez asks the Court to reject *Chevron* deference because the statute is not ambiguous:  He argues that the "plain meaning" of the "'when released' language . . . requires the government to exercise its mandatory detention authority" either "immediately after the alien's release" or not at all.  R. 1 ¶ 42; *see also id.* ¶ 40.  But this meaning is far from "plain."  There are, at least, three points of ambiguity:  (1) What does "when the alien is released" modify?  (2) What does "when" mean?  And (3) to what does "an alien described in paragraph (1)" refer?

7

First, does "when the alien is released" dictate when [t]he Attorney General shall take into custody any alien" or the time at which the alien must be "inadmissible" or "deportable" under one of the (A) through (D) subsections?  The former construction could mandate immediate detention, as urged by Lopez Hernandez, R. 1 ¶ 42; *see also Khodr*, 697 F. Supp. 2d at 778–79 ("[T]he phrase 'when the alien is released' clearly and unambiguously requires that the Attorney General take the alien into custody immediately upon the alien's release from criminal custody.").  Under the latter construction, however, the language could assume a completely different meaning, for example, "[t]he Attorney General shall take into custody any alien who, when the alien is released, is inadmissible or deportable under (A) through (D)."  *See Olmos*, 2015 WL 1296598, at *5 ("The two . . . clauses might simply be read as . . . 'The Attorney General shall take into custody any alien who—[is identified in 'A' through 'D'] when the alien is released.'").

Second, even if it does modify the timing of the Attorney General's duty to detain, "when" can assume numerous—and quite different—meanings:  "When" can mean any time after ("You can borrow the book when I finish it."), shortly after ("We can leave when I wake up."), immediately after ("Put your pencils down when the proctor calls 'time.'"), simultaneously ("Scream 'surprise' when she walks in the room."), or no later than ("Pull the ripcord when you reach 500 feet above ground level.")—just to name a few.  *See Straker v. Jones*, 986 F. Supp. 2d 345, 354 (S.D.N.Y. 2013) (noting that the instruction to "return [a] book when you finish reading it" creates a duty that does not evaporate because of a failure to promptly comply).  The court in *Khodr* concluded that "when" unambiguously means "immediately upon."  697 F. Supp. 2d at 778.  If Congress

had intended to give the United States longer to take criminal aliens into custody, the *Khodr* court reasons, Congress "could have . . . us[ed] the phrase 'at any time after the alien is released.'" *Id.* But this argument runs in both directions: If Congress had so intended, it could have just as easily included explicit language limiting mandatory detention to aliens who were taken into custody "contemporaneously with" or "immediately after" or "within three days of" the alien's release. Because Congress included no such language, the ambiguity persists. *See Hosh*, 680 F.3d at 379–80 (holding that "the meaning of § 1226(c) is not plain" because "when" can be interpreted narrowly or broadly); *cf. United States v. Willings*, 8 U.S. 48, 55 (1807) ("[M]uch depends on [whether] the true legislative meaning of the word 'when' . . . . designates the precise time when a particular act must be performed . . . [or] describes the occurrence which shall render that particular act necessary.").

Finally, paragraph (2) of § 1226(c) adds another layer of ambiguity when it precludes the Attorney General from releasing aliens "described in paragraph (1)." Does "aliens described in paragraph (1)" merely mean aliens who fall into one of the (A) through (D) categories in paragraph (1)? Or, does the phrase refer to only those aliens who, in additional to falling into one of the (A) through (D) categories, were also taken into custody immediately after their release? *See Castaneda*, 769 F.3d at 45, *reh'g en banc granted, opinion withdrawn* ("Congress could simply have said 'Any alien described in paragraphs (A) through (D). . . .' The fact that Congress did not use the more natural and condensed wording suggests it had another purpose."). The superior interpretation is

unclear.  *See Olmos*, 2015 WL 1296598, at *3 ("Both interpretations are plausible because the statutory text is ambiguous in its reference to 'an alien described in paragraph (1).'").

Any one of these ambiguities affects whether § 1226(c) authorizes mandatory detention only if the government "immediately takes custody of the alien 'when the alien is released' from criminal incarceration."  *See Rojas*, 23 I. & N. Dec. at 120.  Because the statute is "ambiguous with respect to th[is] specific issue," the Court must defer to the BIA interpretation—if, of course, the interpretation is reasonable.  *See Chevron*, 467 U.S. at 843, 844.

### b.    Chevron Step Two: Permissibility

The Court will defer to the BIA's interpretation because it is a permissible understanding of § 1226(c).  In *Rojas*, the BIA rejected the interpretation that § 1226(c) limits mandatory detention to criminal aliens who were taken into custody immediately upon their release.  23 I. & N. Dec. at 127.  Instead, the BIA explained that the "when released" language identifies the "the point in time at which th[e] duty [to detain] arises." *Id.* at 121.  It does not limit the "alien[s] described in paragraph (1)" to those who both committed an enumerated offense and were detained immediately upon release.  *Id.* at 125.  So the § 1226(c)(2) bar on releasing aliens "described in paragraph (1)," applies to "only those aliens described in subparagraphs (A) through (D)."  *Id.*

Lopez Hernandez's makes two primary arguments for why the BIA interpretation is an impermissible reading of § 1226(c).  First, the "term 'when' includes the characteristic of 'immediacy'" that requires ICE to detain an alien "immediately after or in close temporal proximity to his or her release."  R. 1 ¶¶ 40, 42 (quoting *Waffi v.*

10

*Loiselle,* 527 F. Supp. 2d 480 (E.D. Va. 2007)).  But even so, "nothing in the statute suggests that immigration officials lose authority if they delay."  *Sylvain*, 714 F.3d at 157. Indeed, the concurring BIA Board Members in *Rojas* noted that Congress's "frustration with the [INS's] inability to achieve the deportation of aliens" served as the "primar[y]" motivation to "create this scheme in the first place."  *See* 23 I. & N. Dec. at 128 (concurrence).  So it seems unlikely that "Congress would have based the success of its newly created scheme on a requirement that the [INS] perform at a very high level of efficiency."  *Id.*  Moreover, because § 1226(c) compels ICE to hold certain aliens without bond, it would make little sense to lift that duty in any case where ICE failed to detain an alien precisely at the exact point when the duty arose.  *See Straker*, 986 F. Supp. at 354 (noting that the instruction to "return [a] book when you finish reading it" creates a duty that does not evaporate because of a failure to promptly comply); *cf. Sylvain*, 714 F.3d at 158 ("Bureaucratic inaction—whether the result of inertia, oversight, or design—should not rob the public of statutory benefits. The Tenth Circuit has called this 'the better-late-than-never principle.'") (quoting *United States v. Dolan*, 571 F.3d 1022, 1027 (10th Cir.2009), *aff'd sub nom. Dolan v. United States*, 560 U.S. 605 (2010)).

Next, Lopez Hernandez claims that the *Rojas* construction "would render the 'when the alien is released' clause redundant and therefore null."  R. 1 ¶ 42.  But Lopez Hernandez is wrong.  Under *Rojas*, the "when the alien is released" language identifies when the duty to detain a criminal alien arises.  23 I. & N. Dec. at 121.  Without the "when . . . released" language, § 1226(c) would empower ICE to take into custody a

criminal alien still serving a term of imprisonment.  *See Orozco-Valenzuela v. Holder*, No. 1:14 CV 1669, 2015 WL 1530631, at *7 (N.D. Ohio Apr. 6, 2015).

Because the BIA's interpretation is neither "arbitrary or capricious in substance," nor "manifestly contrary to the statute," the interpretation receives controlling weight.  *See Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 53 (2011).

**III.    Forfeited Statutory Claim**

Lopez Hernandez claims in his reply that, even if the BIA's interpretation of § 1226(c) in *Rojas* is correct, he is "still not subject to the mandatory detention statute because his release preceded his conviction for marijuana possession."  R. 8 at 4; (citing 8 U.S.C. § 1226(c)).  And, once convicted, he was sentenced only to probation.  So, he argues, he was never in "custody" within the meaning of the statute.  *Id.*  Because Lopez Hernandez did not raise this argument in his petition, however, *see* R. 1, the argument is forfeited.  *See Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 444 (6th Cir. 2012) ("Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court." (quoting *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010)).

**IV.    Due Process Claim**

Lopez Hernandez challenges his detention under 8 U.S.C. § 1226(c) on due process grounds as well.  *See* R. 1 ¶ 6; R. 8 at 7–8.  He contends that Congress enacted the mandatory detention statute to address "concerns of dangerousness, recidivism, and flight risk."  *Id.* at 8 (citing *Demore v. Kim,* 538 U.S. 510, 519–20 (2003)).  According to Lopez Hernandez, those special justifications do not apply to him because he had "resided in the

community for years after release." *Id.*  Because it would be unreasonable to "presume" that Lopez Hernandez had been "either . . . dangerous or [a] flight [risk]," *id.* at 7 (citing *Castaneda v. Souza*, 769 F.3d 32, 47 (1st Cir. 2014), *reh'g en banc granted*, *opinion withdrawn* (Jan. 23, 2015)), he claims his detention was "not reasonably related to a legitimate regulatory or statutory purpose."  R. 1 ¶ 6.

But Lopez Hernandez ignores *Demore*'s central thrust.  The Supreme Court reaffirmed in *Demore* the government's authority to detain deportable aliens during the limited period necessary for their removal proceedings based on their membership in a class.  *Demore*, 538 U.S. at 526.  The government need not make an individualized finding of likely future dangerousness or flight risk.  *Id.* at 524, 525.  For example the Immigration and Naturalization Service ("INS"), which has since been replaced by ICE, could deny Communists bail even without individual findings of dangerousness or flight risk.  *Id.* at 524.  Indeed, "in at least one case," detention without bail was "permissible" despite "a specific finding of nondangerousness."  *Id.* at 525 (citing *Carlson v. Landon*, 342 U.S. 524, 549 (1952) (Black, J., dissenting)).

Congress enacted the detention provisions in § 1226(c) against a backdrop of concern at the high number of aliens who failed to show up for their removal hearings.  *Id.* at 521.  Congress relied on studies that "suggested that detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from this country."  *Id.* (citing 1989 House Hearing 75; Inspection Report, App. 46; S. Rep. 104-48, at 32).  In light of this statutory purpose, due process does not require an individualized determination that Lopez Hernandez was either dangerous or a flight risk.

13

*See Id.* at 524–25.   Detaining Lopez Hernandez "prior to [and] during [his] removal proceeding" "necessarily . . . increase[s] the chance that, if ordered removed, [Lopez Hernandez] will be successfully removed." *Id.* at 528.

Lopez Hernandez argues that he spent two years in the community after he was convicted, so he is not a flight risk.  R. 8 at 7–8.  Accordingly, he claims, his detention is not reasonably related to a legitimate regulatory or statutory purpose.  R. 1 ¶ 6.  But that argument is unpersuasive.  *Demore* established that Congress could reasonably find that criminal aliens, as a category, are presumptively dangerous to society and flight risks.  *Demore*, 538 U.S. at 524–25.  Though the blanket presumption might prove more burdensome to defendants like Lopez Hernandez, "the Due Process Clause does not require [Congress] to employ the least burdensome means to accomplish its goal [of deporting criminal aliens under 1226(c)]." *Id.* at 528.

But even an otherwise permissible detention under § 1226(c) can become constitutionally problematic if it continues too long.  In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court found a due process violation in part because, "unlike detention pending a determination of removability," a "post-removal-period detention . . . has no obvious termination point." *Id.* at 697.  In *Demore*, mandatory detention pending a removal decision did not violate due process because the detention has "a definite termination point" that, even in the longest 15 percent of cases, came within "about five months." *Demore*, 538 U.S. at 530.

The length of Lopez Hernandez's detention without a bond hearing does not raise due process concerns.  *See Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003).  ("Courts

must examine the facts of each case [challenging the length of mandatory detention under § 1226(c)], to determine whether there has been unreasonable delay in concluding removal proceedings."). Lopez Hernandez filed his petition less than two months after the start of his detention. R. 1 (filed on January 23, 2015); *id.* ¶ 38 ("Petitioner was taken into ICE custody and charged with mandatory detention on or about December 1, 2014."). Despite a continuance, requested by Lopez Hernandez, his removal hearing is scheduled for April 14, 2015, less than five months after his detention. A detention like this—one that is short and to effectuate effective removal—does not raise due process concerns.

## CONCLUSION

Lopez Hernandez claims that his detention violates 8 U.S.C. § 1226(c) and that he is entitled to a bond hearing under § 1226(a) and the due process clause of the United States Constitution. Because the BIA based its detention of Lopez Hernandez on its reasonable interpretation of ambiguous provisions of § 1226(c), the Court defers to the BIA's interpretation under *Chevron*. As neither § 1226(c) nor the due process clause entitles Lopez Hernandez to a bond hearing, the BIA was authorized to detain Lopez Hernandez for a reasonable period to effectuate his removal.

This Court does not make this determination lightly. It recognizes the consequences to Lopez Hernandez, a young man when he came to this Country (and a young man still). And, as the Court noted, there are conflicting decisions not only in this Circuit, but in this Court. As such, district courts would benefit from the wisdom of the Sixth Circuit. Moreover, for Lopez Hernandez, time is of the essence. Thus, this Court

will direct the Clerk of Court to file a notice of appeal on his behalf.  He can always move to dismiss that appeal without consequence if he so chooses.

Accordingly, it is **ORDERED** that:

(1)     Lopez Hernandez's petition, R. 1, is **DENIED**.

(2)     Lopez Hernandez's motion to expedite, R. 9, is **DENIED AS MOOT**.

(3)     This action is **DISMISSED** and **STRICKEN** from the Court's active docket.

(4)     The Court shall enter an appropriate judgment.

(5)     The Clerk shall file a notice of appeal on Lopez Hernandez's behalf.

This the 13th day of April, 2015.

**Signed By:**

**_Amul R. Thapar_**

**United States District Judge**

16